21 F.3d 421
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Carolyn BREWINGTON, Plaintiff-Appellant,
v.
Donna SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 93-2300.
 United States Court of Appeals, Fourth Circuit.
 Submitted Feb. 17, 1994.
Decided March 11, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. W. Earl Britt, District Judge. (CA-92-123-7-CIV-B)
 Kathleen Shannon Glancy, Wilmington, NC, for appellant.
 J. Douglas McCullough, U.S. Atty., Barbara D. Kocher, Special Asst. U.S. Atty., Raleigh, NC, for appellee.
 E.D.N.C.
 AFFIRMED.
 Before WILKINSON, HAMILTON, and MICHAEL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Carolyn A. Brewington appeals the district court's refusal to disturb the Secretary's denial of disability benefits for the period of October 16, 1978, to April 5, 1989. Brewington had been employed primarily as a textile worker. She was laid off in March 1978. Her former employer eventually called her back to work, but Brewington could not return because of the onset of her serious affliction with arthritis. Brewington's physical problems initially manifested themselves by way of an elevated uric acid reading in a blood sample of May 1978.
 
 
 2
 This blood test marked the beginning of a prolonged, but largely successful, battle with rheumatoid arthritis. Brewington returned to work for a short time in 1981 or 1982 as a sewing machine operator, but left after a brief period either because of pain or a lay-off. It was not until December 1988 that the arthritis began to afflict Brewington on a constant basis continuing through March 1989, when her current treating physician referred her to the rheumatology clinic at North Carolina Memorial Hospital in Chapel Hill. The results of Brewington's April visit to the clinic serve as the beginning point for the Secretary's determination of Brewington's disability.
 
 
 3
 Brewington first applied for disability benefits in July 1980. Her application was denied. Two later attempts to receive benefits were also unsuccessful. In May 1988, Brewington sought reconsideration of her claim under the favorable decision of the class action suit Hyatt v. Sullivan, 899 F.2d 329 (4th Cir.1990). Again her claim was denied. Following this denial Brewington requested a hearing before an Administrative Law Judge. The ALJ determined that Brewington was entitled to SSI payments starting April 5, 1989, but not before. Based on this partially unfavorable decision, Brewington requested review by the Appeals Council. The Council vacated the unfavorable portion of the decision and remanded to an ALJ for further findings. Despite this directive by the Appeals Council and another hearing with further findings, a second ALJ determined that Brewington was not entitled to benefits prior to the April 5, 1989, date. Brewington again requested review before the Appeals Council. This time she was denied review. Accordingly, the ALJ's decision became that of the Secretary.
 
 
 4
 Brewington then brought this action in the district court seeking review of the denial of benefits before April 5, 1989. The court affirmed the agency's decision concluding that "the ALJ's decision was supported by substantial evidence, and that the conclusions reached were legally correct under controlling law." Brewington noted her appeal and the case is properly before this Court.
 
 
 5
 Brewington claims that the administrative law judge's decision is not supported by substantial evidence. This Court, like the district court, will uphold the Secretary's disability determination if it is supported by substantial evidence. 42 U.S.C. Sec. 405(g) (1988). The Supreme Court defined substantial evidence as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.' " Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990) (quoting Laws v. Celebrese, 368 F.2d 40, 642 (4th Cir.1962)). This Court will not reweigh the evidence or substitute its judgment for that of the ALJ. Hays, 907 F.2d at 1456.
 
 
 6
 The ALJ must consider objective medical facts and opinions and the diagnoses of treating and examining doctors, which constitute a major part of the proof in disability cases. McLain v. Schweiker, 715 F.2d 866, 869 (4th Cir.1983). The "Attending Physicians Rule" requires that "the opinion of a claimant's treating physician be given great weight and may be disregarded only if there is persuasive contradictory evidence." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir.1987). Brewington's treating physicians each reported favorably on the treatment and control of her arthritis until April 1989. Throughout the course of treatment of Brewington's arthritis, the record reveals that prior to April 1989, she had not been seriously impaired in her ability to perform vocational activity in the national economy. Dr. Sauter, who was Brewington's initial arthritis specialist at North Carolina Memorial Hospital, noted on several occasions during Brewington's course of treatment that her arthritis did not impair her range of motion. She described Brewington as an "ideal candidate" for vocational rehabilitation. Later, Dr. Getz and physicians at Lake Waccamaw Health Associates found that she was capable of working. Finally, Dr. Eisenberg noted in her later visits to Chapel Hill that Brewington had full range of motion in all of her joints. The ALJ gave this evidence its appropriate weight.
 
 
 7
 Brewington's testimony at the administrative hearing painted a different picture. Her testimony was rife with references to significant pain and virtual incapacity. Brewington's daughter Brigette testified to the amount of assistance Brewington required with daily activities, such as dressing and bathing. Nonetheless, it was simply not improper for the ALJ to conclude that Brewington's testimony to the contrary was not sufficiently persuasive to disregard the evidence from these treating physicians.
 
 
 8
 In cases in which a claimant alleges a non-exertional impairment, including pain, the claimant must present medical evidence of a condition that could reasonably be expected to produce pain. Objective evidence of pain or its magnitude is not required. Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir.1986). If an ALJ finds complaints of pain or the magnitude of pain to be incredible, the ALJ must give specific reasons for his finding. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir.1985). Here, Brewington presented significant medical evidence of rheumatoid arthritis, a condition that could reasonably be expected to produce pain. This is not in dispute. Nonetheless, the ALJ found Brewington's assessment of the magnitude, or more specifically, the frequency, of the pain to be incredible and gave sufficiently specific reasons for that finding. There is no justification for this Court to upset this reasoned finding.
 
 
 9
 Substantial evidence supports the ALJ's finding that Brewington was not disabled before April 1989. Testimony and medical evidence before the ALJ demonstrated that Brewington was impaired and afflicted by rheumatoid arthritis. Because of the relative success of her treatment program, however, she was not impaired to the extent that she could perform no substantial gainful activity. There is substantial evidence to support a finding that she was not entitled to benefits before the April 5, 1989, date.
 
 
 10
 Brewington also contends that the ALJ misapplied the Code of Federal Regulations Listing of Impairments concerning rheumatoid arthritis and improperly framed the hypothetical question to the vocational expert in finding that there were jobs that Brewington could perform notwithstanding her impairment. While Brewington did have the positive serologic results for rheumatoid arthritis in the period in question as required in the Listing for rheumatoid arthritis, see 20 C.F.R. Sec. 404.1520(d) (1993); 20 C.F.R. Sec. 404, subpart P, app. 1, 1.02 B (1993), she did not have the required documented limitation of function which must last for a period of twelve months in spite of prescribed therapy. 20 C.F.R. Sec. 404, subpart P, app. 1, 1.02 A. To the contrary, as noted in the discussion above, Brewington's arthritis consistently responded quite well to treatment. The ALJ relied on substantial evidence in finding that Brewington did not qualify as disabled under the Listing.
 
 
 11
 The same is true of the hypothetical the ALJ posed to the vocational expert. Based on the ALJ's hypothetical, a vocational expert testified that there would be some jobs that would meet the guidelines of the hypothetical. There is substantial evidence, primarily that of Brewington's own physicians, to support the manner in which the ALJ characterized Brewington's condition to the expert. Therefore the finding that Brewington could have performed some sort of vocational activity before April 1989, is also supported by substantial evidence and should not be disturbed.
 
 
 12
 We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED