53 F.3d 328
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Granville MULLINS, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 94-2083.
 United States Court of Appeals, Fourth Circuit.
 Argued April 3, 1995.
Decided May 4, 1995.
 
 ARGUED: Derrick Ward Lefler, GIBSON & MCFADDEN, Princeton, West Virginia, for Appellant. Patricia McEvoy Smith, Assistant Regional Counsel, Office of the General Counsel, DEPARTMENT OF HEALTH & HUMAN SERVICES, Philadelphia, Pennsylvania, for Appellee. ON BRIEF: Charlotte Hardnett, Chief Counsel,
 Region III, Dorotha J. Lundelius, Division Chief, Office of the General Counsel, DEPARTMENT OF HEALTH & HUMAN SERVICES, Philadelphia, Pennsylvania; Rebecca Betts, United States Attorney, Stephen M. Horn, Assistant United States Attorney, Charleston, West Virginia, for Appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, ERVIN, Chief Judge, and WILKINSON, Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Granville W. Mullins appeals the denial of his claim for Social Security disability insurance benefits. We affirm.
 
 
 2
 * Mullins is a 54-year-old resident of West Virginia. For over twenty years, he worked as a coal miner. On December 31, 1990, he lost his job when the mine at which he was employed shut down. He has been unable to find a steady job since then, and has performed odd jobs for neighbors. On August 29, 1991, Mullins applied for Social Security disability insurance benefits. He claimed to be unable to work because of breathing problems, a back injury, arthritis in his shoulders and back, an arm injury, and numbness and pain in both legs.
 
 
 3
 After Mullins's claim was denied at the initial administrative level, a hearing was held before an Administrative Law Judge ("ALJ"). At the hearing, Mullins testified that shortness of breath was his primary physical problem. He stated, for example, that he became winded after climbing the stairs. This testimony was supported by some medical evidence. In 1991 Mullins was awarded black lung benefits through the Department of Labor, and he was admitted to the hospital in 1988 following an episode of breathing difficulty. Upon discharge from the hospital, Mullins was diagnosed as suffering from chronic obstructive pulmonary disease, with a secondary diagnosis of lung nodules secondary to coal workers' pneumoconiosis and tobacco abuse.
 
 
 4
 After the 1988 hospitalization, Mullins quit smoking, made a recovery, and returned to work in the mine. Over the next two years, he visited his regular physician on several occasions because of breathing problems, but the record shows no evidence of further hospitalization or incapacitation. In May 1991, Dr. C.P. Vasudevan tested Mullins and concluded that his pulmonary functions were "[e]ssentially normal." The doctor noted a"[m]ild reduction in exercise capacity," but found "[n]o demonstrable cardiac or ventilatory limitations to exercise." At the hearing, Mullins admitted that despite his breathing problems, he was able to do laundry; stoke the furnace; and, weather permitting, fish for trout once a week. In a pre-hearing questionnaire, he stated that although he had been forced to cut back on some of his activities, he was still able to take out the trash, work in the garden, go to church twice a week, visit friends, make some household repairs, and occasionally mow the lawn and wash the car.
 
 
 5
 The ALJ also considered evidence of Mullins's back and leg problems. At the hearing, Mullins testified that his back problem was "not real serious, but it does flare up and keep me from performing a job like I should." He explained that he was unable to carry heavy motors weighing 40-100 pounds, as he had done in the mine. Mullins also testified that due to his back problems, and what he believed to be arthritis in his legs and feet, he was unable to stand still for more than 20-30 minutes, and could not sit in one position for more than 30-45 minutes. He admitted that he had no difficulty walking any distance on a level plane.
 
 
 6
 Consistent with his testimony, Mullins's back problems were diagnosed as relatively minor. In 1991, Dr. Kwan H. Lee examined Mullins and diagnosed Grade I spondylolisthesis.[1] As a result of Dr. Lee's findings, Mullins received a 5% partial disability award. Dr. Lee specifically noted, however, that Mullins's back condition was not disabling and was unlikely to worsen. Mullins admitted at the hearing that he had not sought treatment for his alleged arthritis.
 
 
 7
 The ALJ noted that Mullins had suffered two prior work-related injuries. In 1973, he sustained a fracture to the right elbow, resulting in a 15% permanent partial disability award. In 1987, Mullins's leg was cut in an accident at the mine. By 1991, however, Dr. Elias H. Isaac found that the leg injury had healed, that Mullins did not require any further treatment, and that the prognosis was good. Dr. Isaac recommended that Mullins be given only a modest, .5% partial disability award for the leg injury.
 
 
 8
 In 1992, at the request of his attorney, Mullins was evaluated by a psychiatrist and a clinical psychologist. They concluded that he suffered from severe depression and anxiety, making him incapable of gainful employment. At the hearing, however, Mullins denied having any psychological problem which would prevent him from working. He stated that he had overcome his depression.
 
 
 9
 Finally, the ALJ heard the testimony of a vocational expert, Patricia McFann. According to McFann, a hypothetical 52-year-old person with many of Mullins's characteristics could hold a number of medium and light jobs,[2] including janitor, service station attendant, kitchen helper, cashier, small parts assembly, and security guard. On cross-examination, the expert admitted that many of these jobs would not be available to a person who was unable to remain on his feet "for the biggest part of the day."
 
 
 10
 Several months after the hearing, the ALJ issued a written opinion denying Mullins's claim. The ALJ began by stating the applicable legal standard. Under 42 U.S.C. Sec. 423(d)(1)(A), a claimant may receive Social Security disability insurance benefits only if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." The ALJ then properly followed the five-step decision process mandated by 20 C.F.R. Sec. 404.1520. See also Hunter v. Sullivan, 993 F.2d 31, 34-35 (4th Cir.1992) (per curiam) (discussing the five-step process).[3] He concluded that although Mullins's physical problems would prevent him from resuming his prior work as a coal miner, Mullins was not disabled from performing a variety of medium and light jobs. The Appeals Council denied review, and Mullins filed an unsuccessful action in the district court seeking judicial review of the agency's decision. This appeal followed. On appeal, Mullins raises only one issue: whether the ALJ's decision was supported by substantial evidence.
 
 II
 
 11
 The ALJ's factual findings must be affirmed if they are supported by substantial evidence. 42 U.S.C. Sec. 405(g). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Our review is thus a limited one: "[i]t is not our place either to weigh the evidence or to substitute our judgment for that of the Secretary if [her] decision was supported by substantial evidence." Hunter, 993 F.2d at 34.
 
 
 12
 In this case, the ALJ's findings easily meet the substantial evidence standard. Mullins has a history of some pulmonary problems and has a non-disabling back condition, but the record does not show that he suffers from any disabling physical impairment. To the extent he complained about back and leg discomfort that precluded him from standing or sitting for more than a short period of time, his testimony was not supported by objective evidence. See 20 C.F.R. Sec. 1529(a) (1994) (subjective complaints can support a finding of disability only upon objective evidence "which could reasonably be expected to produce the pain or other symptoms alleged"); see generally Hyatt v. Sullivan, 899 F.2d 329 (4th Cir.1990). In addition, Mullins's complaints were contradicted by his admission that he was able to go fishing, while standing in a stream, for two to three hours at a stretch, and by the fact that he drove his automobile 60 miles to the hearing before the ALJ.
 
 
 13
 Mullins's complaints about shortness of breath do find some support in the medical evidence, cf. 20 C.F.R. Sec. 1529(b) (1994), but they are undermined by his admitted ability to perform a wide variety of daily tasks, see Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir.1994), and the findings of Dr. Vasudevan that he suffered "[n]o demonstrable cardiac or ventilatory limitations to exercise." Moreover, the ALJ's findings are not inconsistent with the fact that Mullins receives black lung benefits, because those payments were awarded based on standards different from those applicable in Social Security disability insurance cases, see 20 C.F.R. Secs. 718.203; 718.204. Because of the difference in applicable standards, findings of disability by other agencies are not binding on the Secretary. See 20 C.F.R. Sec. 404.1504; Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir.1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir.1991).
 
 
 14
 The ALJ properly gave little weight to the evidence of Mullins's alleged psychological problems, since those findings lacked an adequate clinical basis and Mullins himself claimed to have overcome his depression. Mullins does not contend on appeal that either his elbow or leg injuries were disabling.
 
 
 15
 Finally, the ALJ's findings are fully consistent with the testimony of the vocational expert. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989) (guidelines for testimony from vocational experts). As noted above, the expert qualified her opinion by stating that someone who was unable to be on his feet for much of the day would not be able to hold down a job. But this qualification is inapplicable here, because Mullins testified only that he could not stand in one place for extended periods; he admitted that there were no limits to his ability to walk on a level plane. Moreover, Mullins's claim that he could not remain standing in one place for more than 20-30 minutes was unsupported by objective medical evidence and inconsistent with portions of Mullins's own testimony.
 
 
 16
 In sum, we find that the ALJ's conclusion was amply supported by the evidence of record.
 
 III
 
 17
 For the reasons stated, the judgment of the district court is
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 For an explanation of spondylolisthesis, see Lee v. Sullivan, 945 F.2d 687, 688-89 n. 1 (4th Cir.1991)
 
 
 [2]
 Medium exertional work involves frequent lifting or carrying of objects weighing up to 25 pounds, and occasional lifting of heavier objects weighing not more than fifty pounds. Medium work also requires standing or walking for a good part of the work day. 20 C.F.R. Sec. 404.1567(c) (1994). Light work involves a good deal of standing or walking, frequent lifting of light objects weighing less than ten pounds, and occasional lifting of objects weighing up to 20 pounds. 20 C.F.R. Sec. 404.1567(b) (1994)
 
 
 [3]
 In working through the five steps, the ALJ found that (1) Mullins was not working, (2) Mullins had a "severe" impairment, (3) Mullins's impairment did not meet or equal the requirements of "listed impairment," (4) Mullins could not return to his prior work as a coal miner, and (5) Mullins could perform other work